No. 24-1624

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE EIGHTH CIRCUIT

**LIBERTY ENERGY, INC.; NOMAD PROPPANT SERVICES, LLC,**

*Petitioners*,

**v.**

**UNITED STATES SECURITIES AND EXCHANGE COMMISSION,**

*Respondent.*

**DISTRICT OF COLUMBIA, *et al.*,**

*Intervenors.*

Petition for Review of an Order of the
Securities & Exchange Commission

## REPLY BRIEF OF PETITIONERS LIBERTY ENERGY INC. & NOMAD PROPPANT SERVICES, LLC

Katherine C. Yarger
Lehotsky Keller Cohn LLP
700 Colorado Blvd # 407
Denver, CO 80206

R. Trent McCotter
  *Counsel of Record*
Jonathan Berry
Michael Buschbacher
Jared M. Kelson
Boyden Gray PLLC
800 Connecticut Ave. NW
Suite 900
Washington, DC 20006
202-706-5488
tmccotter@boydengray.com

*Counsel for Petitioners*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..........................................................................ii

INTRODUCTION ................................................................................... 1

ARGUMENT ........................................................................................ 4

I. The Rule Violates the Major-Questions Doctrine ............................ 4

    A. The Rule Easily Triggers the Major-Questions Doctrine ......... 4

    B. The SEC Effectively Concedes That It Lacks Clear Statutory Authority ................................................................................ 10

    C. The Court Need Not Reach Them, But the SEC's Other Statutory Authority Arguments Are Wrong............................ 11

II. The Rule Is Arbitrary and Capricious ........................................... 19

    A. The SEC Still Refuses to Admit It Changed Positions ........... 19

    B. The Rule Relies on "At Best Mixed" and New Evidence ........ 20

    C. The Final Rule "Sidestepped" Core Criticisms and Changed Dramatically from the Proposed Rule .................................... 24

III. The Rule Violates the First Amendment ....................................... 26

    A. The SEC Cannot "Rejigger" the Informational Playing Field by Compelling Speech ............................................................ 26

    B. The SEC's Counter Arguments Are Unpersuasive ................ 29

    C. The Rule Cannot Satisfy Heightened Scrutiny ..................... 32

IV. The Court Should Set Aside the Rule in Its Entirety ................... 34

CONCLUSION.................................................................................... 36

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*1-800-411-Pain Referral Serv., LLC v. Otto*,
744 F.3d 1045 (8th Cir. 2014)........................................................32, 34

*Aaron v. SEC*,
446 U.S. 680 (1980) ............................................................................ 13

*Amoco Prod. Co. v. Watson*,
410 F.3d 722 (D.C. Cir. 2005).............................................................. 18

*Bolger v. Youngs Drug Prods. Corp.*,
463 U.S. 60 (1983) .............................................................................. 31

*Bus. Roundtable v. SEC*,
647 F.3d 1144 (D.C. Cir. 2011)............................................................ 21

*Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557 (1980)........................................................ 33

*Dep't of Educ. v. Louisiana*,
144 S. Ct. 2507 (2024) ........................................................................ 34

*Dryer v. NFL*,
814 F.3d 938 (8th Cir. 2016)................................................................ 31

*FCC v. Fox Television Stations, Inc.*,
556 U.S. 502 (2009) ............................................................................ 20

*Fed'n of Americans for Consumer Choice, Inc. v. DOL*,
No. 6:24-cv-163, 2024 WL 3554879 (E.D. Tex. 2024) ......................... 7

*Fischer v. United States*,
144 S. Ct. 2176 (2024) ........................................................................ 12

*Iowa League of Cities v. EPA*,
711 F.3d 844 (8th Cir. 2013)................................................................ 35

*Loper Bright Enters. v. Raimondo*,
144 S. Ct. 2244 (2024) ........................................................................ 13

*Lopez-Chavez v. Garland*,
991 F.3d 960 (8th Cir. 2021)................................................................ 15

ii

*Luna Perez v. Sturgis Pub. Schs.*,
598 U.S. 142 (2023) ................................................................ 13

*Matrixx Initiatives, Inc. v. Siracusano*,
563 U.S. 27 (2011) .................................................................. 14

*Mayor of Baltimore v. Azar*,
973 F.3d 258 (4th Cir. 2020) .................................................. 35

*In re MCP No. 185*,
No. 24-7000, 2024 WL 3650468 (6th Cir. Aug. 1, 2024) ............... 7, 11

*Moody v. NetChoice, LLC*,
144 S. Ct. 2383 (2024) ................................................ 27, 28, 33

*NAM v. SEC*,
748 F.3d 359 (D.C. Cir. 2014) ................................................ 29

*NAM v. SEC*,
800 F.3d 518 (D.C. Cir. 2015) ...................................... 28, 29, 30

*NFIB v. OSHA*,
595 U.S. 109 (2022) ............................................................ 4, 9

*NIFLA v. Becerra*,
585 U.S. 755 (2018) .............................................................. 29

*Ohio v. EPA*,
144 S. Ct. 2040 (2024) .................................................... 24, 25

*Owner-Operator Indep. Drivers Ass'n, Inc. v. FMCSA*,
494 F.3d 188 (D.C. Cir. 2007) ................................................ 23

*Porous Media Corp. v. Pall Corp.*,
173 F.3d 1109 (8th Cir. 1999) ................................................ 31

*Romine v. Acxiom Corp.*,
296 F.3d 701 (8th Cir. 2002) .................................................. 18

*SEC v. W.J. Howey Co.*,
328 U.S. 293 (1946) .............................................................. 23

*Shazi v. Wilkinson*,
988 F.3d 441 (8th Cir. 2021) .................................................. 20

*Sorrell v. IMS Health Inc.*,
564 U.S. 552 (2011) .............................................................. 26

Appellate Case: 24-1624    Page: 4    Date Filed: 09/26/2024 Entry ID: 5440363

*Telescope Media Grp. v. Lucero,*
  936 F.3d 740 (8th Cir. 2019)..............................................26

*TSC Indus., Inc. v. Northway,*
  426 U.S. 438 (1976) ..............................13, 14, 15, 23, 24

*Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council,*
  *Inc.*, 425 U.S. 748 (1976) ................................................31

*West Virginia v. EPA,*
  597 U.S. 697 (2022) ..................................4, 8, 10, 11

*Zauderer v. Off. of Disciplinary Counsel of the Sup. Ct. of*
  *Ohio*, 471 U.S. 626 (1985) ..............................................34

**Statutes**

15 U.S.C. § 77aa ..................................................................16
15 U.S.C. § 77g ......................................................................2
15 U.S.C. § 77i ......................................................................35
15 U.S.C. § 77k ..................................................................16
15 U.S.C. § 77q ..................................................................16
15 U.S.C. § 78*l* ..................................................................16
15 U.S.C. § 78m ..................................................................30
15 U.S.C. § 78n ..................................................................14
15 U.S.C. § 78n ..................................................................16

**Other Authorities**

17 C.F.R. § 229.103 ............................................................14
40 Fed. Reg. 51,656 (Nov. 6, 1975) ..............................19, 20
47 Fed. Reg. 11,380 (Mar. 16, 1982) ..............................14
64 Fed. Reg. 45,150 (Aug. 19, 1999) ..............................18
89 Fed. Reg. 21,668 (Mar. 28, 2024) .... 7, 17, 18, 21, 23, 24, 26–28, 32, 33
SEC, Press Release, *SEC Adopts Rules to Enhance and*
  *Standardize Climate-Related Disclosures for Investors*
  (Apr. 8, 2024) ..................................................................22

Statement from SEC Comm'r Hester M. Peirce, *Green Regs and Spam: Statement on the Enhancement and Standardization of Climate-Related Disclosures for Investors* (Mar. 6, 2024) .......................................................... 5

Statement from SEC Comm'r Mark T. Uyeda, *A Climate Regulation under the Commission's Seal: Dissenting Statement on The Enhancement and Standardization of Climate-Related Disclosures for Investors* (Mar. 6, 2024) ........... 3, 5, 9

The White House, *FACT SHEET: President Biden's Executive Actions on Climate to Address Extreme Heat and Boost Offshore Wind* (July 20, 2022) ............................................. 1

The White House, *Press Briefing by Principal Deputy Press Secretary Karine Jean-Pierre* (Oct. 21, 2021) ....................................... 1

The White House, *Remarks by President Biden in a Press Conference* (Sept. 10, 2023)................................................................. 1, 5

The White House, *Remarks by President Biden on Actions to Tackle the Climate Crisis* (July 20, 2022) ............................................. 1

# INTRODUCTION

The Biden Administration claims climate risks present an "existential threat" literally worse than "a nuclear war," and "[s]ince Congress is not acting on this emergency, President Biden will."[1] Playing its part in the Administration's "whole-of-government" approach to climate change,[2] the SEC stepped into the political firestorm and proposed an unprecedented plan to employ securities regulation to direct companies' attention to climate change. The outcome of that proposal was perhaps the most expansive rule ever issued by the SEC, and certainly the most novel, requiring exhaustive climate-related disclosures in nearly every registration statement and periodic report.

Facing litigation that has already caused the Rule to be stayed twice (once by the Fifth Circuit and once by the SEC itself), the SEC now tries to present this unprecedented, multi-billion-dollar Rule as a narrow,

---

[1] The White House, *Remarks by President Biden in a Press Conference*, (Sept. 10, 2023), https://tinyurl.com/2b33vyn3; The White House, *FACT SHEET: President Biden's Executive Actions on Climate to Address Extreme Heat and Boost Offshore Wind* (July 20, 2022), https://tinyurl.com/32ps54x3; *see also* The White House, *Remarks by President Biden on Actions to Tackle the Climate Crisis* (July 20, 2022), https://tinyurl.com/4vr6ky94.

[2] The White House, *Press Briefing by Principal Deputy Press Secretary Karine Jean-Pierre* (Oct. 21, 2021), http://tiny.cc/em4mxz.

1

mine-run securities disclosure regime. But no façade can obscure the SEC's breathtaking assertion of power, which it made only *after* Congress refused to provide such authority.

The SEC's view of its disclosure power is extraordinary. For example, the SEC claims it can mandate disclosures about any issue that that *might* be of interest to some investors or *might* be the subject of future government regulations (including foreign ones), regardless of whether the information is in fact material to reasonable investors or is even financial in nature. SEC.Br.40, 47, 53. Under that view, the SEC could pick any cause *du jour* and impose an extensive mandatory-disclosure regime addressing it. Such a broad assertion of power requires clear textual permission from Congress, yet the best the SEC can muster are residual clauses authorizing "other" disclosures "in the public interest." *E.g.*, 15 U.S.C. § 77g(a)(1).

The SEC also claims to be "'agnostic'" on all-things climate, SEC.Br.42, but the Rule is "in a class of its own without comparison" to any prior SEC disclosure regime, making it "climate regulation

promulgated under the Commission's seal."[3] At nearly every step, the Rule creates *sui generis* requirements for climate disclosures that do not exist anywhere else in securities law. Liberty.Br.22–24.

The SEC's sleight of hand does not stop there. The SEC claimed to have dropped the most controversial aspects of the proposed rule, only to jam them through the backdoor. The SEC also prevented meaningful public scrutiny by relying on dozens of previously unidentified studies for core justifications of the Rule. Finally, the SEC repeatedly tries mid-litigation to rewrite the text of the Rule's materiality thresholds to disguise the Rule's unprecedented scope.

The Rule's overwhelming breadth and novelty demonstrate that the Rule is unlawful and should be set aside under the major-questions doctrine, the APA, and the First Amendment.

---

[3] Statement from SEC Comm'r Mark T. Uyeda, *A Climate Regulation under the Commission's Seal: Dissenting Statement on The Enhancement and Standardization of Climate-Related Disclosures for Investors* (Mar. 6, 2024), http://tiny.cc/jhvkxz.

# ARGUMENT

## I. The Rule Violates the Major-Questions Doctrine.

"'[B]road assertions of administrative power demand unmistakable legislative support.'" *NFIB v. OSHA*, 595 U.S. 109, 116 (2022). The SEC's assertion of power checks every box for the major-questions doctrine, which the SEC effectively concedes it cannot satisfy.

### A. The Rule Easily Triggers the Major-Questions Doctrine.

Even though the major-questions inquiry looms over this case, *see* Comm'r Uyeda, *supra* note 3; Liberty.Br.15–27, the SEC's brief devotes little attention to it, and the few arguments the SEC does make are unpersuasive.

***Climate Change Is a Significant Political Matter.*** The SEC admits the Rule focuses on the subject of climate change, SEC.Br.1–2, and even acknowledges that "climate change is a subject of public discourse," SEC.Br.57 (cleaned up)—a point the Supreme Court itself has recognized, *see West Virginia v. EPA*, 597 U.S. 697, 731–32 (2022). This is evident by the White House's many statements on the subject, for example that the risks arising from "global warming"—i.e., the very things that companies must attempt to quantify and qualify for purposes

4

of their disclosure obligations under the Rule—are the "only existential threat humanity faces" and are "even more frightening than … a nuclear war." *Remarks by President Biden in a Press Conference*, s*upra* note 1.

But even in the face of its own concessions and the Administration's public statements, the SEC nevertheless insists—without authority or explanation—that requiring massive and unique "disclosures *about*" climate change is not political or "controversial." SEC.Br.57 (emphasis added). This undeveloped argument is wrong.

*First*, the Rule is *not* just an ordinary disclosure regime. SEC.Br.55. As Liberty and the dissenting Commissioners have explained at length, the Rule asserts a breathtaking scope of power, with page after page of one-sided assumptions about climate change and *sui generis* definitions and thresholds that apply only to climate disclosures. Liberty.Br.21–24; Comm'r Uyeda, *supra* note 3; Statement from SEC Comm'r Hester M. Peirce, *Green Regs and Spam: Statement on the Enhancement and Standardization of Climate-Related Disclosures for Investors* (Mar. 6, 2024), http://tinyurl.com/2p8xzwj9.

The government cannot insist that climate change is the most important risk facing humanity and that urgent action is needed, but

then argue that unprecedented regulations on those very same risks do not trigger major-questions scrutiny. The Court should thus reject the SEC's tautological hair splitting between directly regulating a controversial issue and issuing complex regulations *about* a controversial issue.

*Second*, even on its own terms, the SEC's argument is wrong. Requiring climate disclosures is *itself* hotly debated in the political realm. The SEC unintentionally proves the point by acknowledging that Congress has rejected numerous bills that would have required various disclosure regimes for climate information. SEC.Br.56–57. Congress not only disagreed about whether disclosures were needed at all, but also the contours of any particular regime. *Id.*

Further belying the SEC's unsupported claim that such disclosures are "not controversial," SEC.Br.57, is the fact that the SEC's proposed rule "received a record number of comments [over 24,000] expressing a range of views," SEC.Br.12, hardly what one would expect for something "not controversial."

To the extent the SEC claims the major-questions doctrine is simply inapplicable to statutes requiring "disclosures," courts across the country

6

disagree. *See, e.g.*, *In re MCP No. 185*, No. 24-7000, 2024 WL 3650468, at *3 (6th Cir. Aug. 1, 2024); *Fed'n of Americans for Consumer Choice, Inc. v. DOL*, No. 6:24-cv-163, 2024 WL 3554879, at *14 (E.D. Tex. 2024).

***The SEC Does Not Dispute that the Rule Imposes Drastic Economic Consequences on the American Economy.*** The SEC never disputes that the Rule affects a "'significant portion of the American economy.'" Liberty.Br.18–20 (quoting *West Virginia*, 597 U.S. at 716, 722); *see* SEC.Br.57. Indeed, the Rule's own flawed figures demonstrate that it will impose over $4 billion in costs. Liberty.Br.18–19. The SEC likewise does not dispute that the Rule will cause nationwide "reduced demand for [] services or higher prices" for "market participants, customers, and suppliers," 89 Fed. Reg. 21,668, 21,830 (Mar. 28, 2024), and extends to data collection from "third parties" such as "purchasers, suppliers, or other counterparties," *id.* at 21,851.

By any definition, that qualifies as affecting a significant portion of the economy.

***The SEC Went It Alone After Congress Refused to Give Power for Broad Climate Disclosures.*** The Court "cannot ignore that the regulatory writ [the SEC] newly uncovered conveniently enabled it to

7

enact a program that, long after the dangers posed by greenhouse gas emissions 'had become well known, Congress considered and rejected' multiple times." *West Virginia*, 597 U.S. at 731.

The SEC acknowledges that Congress repeatedly considered and rejected legislation requiring very similar climate-disclosure regimes. SEC.Br.56–57. The SEC's only response is that those bills did not "'exactly'" track the scope of the Rule itself. SEC.Br.56. But the Supreme Court looks to whether the agency rule "essentially" tracks the failed legislation that the agency then adopts. *West Virginia*, 597 U.S. at 731. And on that score, the SEC does not dispute that Congress repeatedly and recently considered amending the securities laws to cover GHG emissions and climate risks, and to require additional SEC rulemaking on climate.

Only after those legislative efforts failed did the SEC act to impose "essentially" the same requirements. *Id.*

***The Novel and Broad Use of Old Statutes.*** The SEC disputes that it has "discover[ed] in a long-extant statute an unheralded power representing a transformative expansion of … regulatory authority." *West Virginia*, 597 U.S. at 724–25 (cleaned up); *see* SEC.Br.56.

8

But the facts say otherwise. "It is telling that [the SEC], in its [nearly full] century of existence, has never before adopted a broad [climate] regulation of this kind." *NFIB*, 595 U.S. at 119. In fact, it has repeatedly declined to do so. *See* Part II.A, *infra*. Further, the SEC has asserted the power to mandate disclosures about any issue that *might* be regulated by any government or that *might* be of interest to some investors, regardless of whether the information is actually material to *reasonable* investors or is financial in nature. SEC.Br.40, 47, 53. There is little that could escape the SEC's reach under that view.

The "'lack of historical precedent,' coupled with the breadth of authority that the [SEC] now claims, is a 'telling indication' that the mandate extends beyond the agency's legitimate reach." *NFIB*, 595 U.S. at 119.

For that reason, the Rule also takes the SEC "outside of its lane" of expertise. Comm'r Uyeda, *supra* note 3. The SEC never bothers to dispute Liberty's argument that the Rule adopts "'third-party [reporting] framework[s]'" for climate information *precisely because* the SEC itself has no expertise evaluating such climate-related information. Liberty.Br.25.

9

\* \* \*

"[T]here is every reason to hesitate before concluding that Congress meant to confer" the power claimed by the SEC. *West Virginia*, 597 U.S. at 724–25 (quotation marks omitted). The SEC therefore must demonstrate clear statutory authority for the Rule. As explained next, the SEC effectively concedes it cannot do so.

## B.   The SEC Effectively Concedes That It Lacks Clear Statutory Authority.

The SEC's brief dedicates only one paragraph to how the Rule supposedly satisfies the major-questions doctrine. SEC.Br.58. The SEC does not respond to Liberty's argument that courts know what clear authority looks like: Congress has clearly authorized other non-traditional disclosures on matters like conflict minerals, extraction of oil and natural gas, and executive pay—yet never for climate. Liberty.Br.27 (citing 15 U.S.C. §§ 78m(p)(1)(A), 78m(q)(2)(A), 78n(i)). The absence of clear statutory authority is fatal under the major-questions doctrine.

The SEC appears to agree that the major-questions doctrine requires a statute that "'specifically authorizes'" the agency's actions, but the SEC fails to identify any such statute. SEC.Br.58. The best the SEC

10

can muster are generic statutes allowing the SEC to mandate additional disclosures in the "'public interest.'" SEC.Br.58.

Contrary to the SEC's assertion, SEC.Br.54, those are precisely the kind of "vague" and "'ancillary'" statutes that fail to satisfy the major-questions doctrine, *West Virginia*, 597 U.S. at 724. As the Sixth Circuit recently explained, statutes authorizing an agency to "'prescribe such rules and regulations as may be necessary *in the public interest*'" are "general or 'ancillary'" provisions that "do[] not suffice to show that Congress clearly delegated authority to resolve a major question." *In re: MCP No. 185*, 2024 WL 3650468, at *4 (emphasis added).

The Court should consider it uncontested: if the major-questions doctrine applies (and it does), the Rule flunks it.

## C. The Court Need Not Reach Them, But the SEC's Other Statutory Authority Arguments Are Wrong.

The Court need not go beyond holding that the Rule must be set aside because of the SEC's lack of *clear* authority to promulgate it. But as demonstrated next, not only does the SEC lack *clear* statutory authority for the Rule, it lacks authority altogether.

11

1. **The Rule Is Outside of the SECs Authority to Require Blanket Disclosures of Basic Balance-Book and Management Information.**

The SEC's "public interest" disclosure power is circumscribed by Congress's accompanying lists of "enumerated disclosures and categories of information" that must be disclosed, SEC.Br.31, nearly all of which are "standardized disclosure[s] of management and accepted 'balance-book' financial figures," Liberty.Br.29.

The SEC argues it is not limited to financial disclosures, pointing to requirements that all registrants disclose the "'organization'" and "'general character of the business.'" SEC.Br.48. Liberty already acknowledged the SEC can require "standardized disclosure[s] of management" information, LibertyBr.29, but that provides no reason to believe Congress authorized the SEC to demand extraordinarily voluminous, blanket disclosures of separately defined climate-related and "transition" risks, using frameworks that have no precedent in the financial world.

The SEC's interpretation would give the phrase "the public interest" "a meaning so broad that it is inconsistent with the company it keeps." *Fischer v. United States*, 144 S. Ct. 2176, 2183–84 (2024) (cleaned

Appellate Case: 24-1624    Page: 18    Date Filed: 09/26/2024 Entry ID: 5440363

up). Or, to use the SEC's own words, the Rule goes far beyond the SEC's power to interstitially "'fill up the details.'" SEC.Br.28.

The SEC falls back to purposivism, arguing that it can require disclosures of anything investors may find "important" because doing so would supposedly advance the purpose of giving investors information. SEC.Br.29. But "no law pursues its purposes at all costs," and thus it is "quite mistaken to assume … that any interpretation of a law that does more to advance a statute's putative goal must be the law." *Luna Perez v. Sturgis Pub. Schs.*, 598 U.S. 142, 150 (2023) (cleaned up). And to be clear, the SEC is wrong that burying investors in disclosures somehow helps them; the Supreme Court has held the opposite. *See TSC Indus., Inc. v. Northway*, 426 U.S. 438, 448–49 (1976); *see also Aaron v. SEC*, 446 U.S. 680, 695 (1980) ("[G]eneralized references to the remedial purposes of the securities laws 'will not justify reading a provision more broadly than its language and the statutory scheme reasonably permit.'").

The SEC resorts to citing its own *regulations* that it says compel broad disclosures. SEC.Br.48–49. But the agency's interpretation of a statute is not entitled to deference, *Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244, 2269–70 (2024), and in any event those regulations *are*

13

tied to financial information, *see* 47 Fed. Reg. 11,380, 11,423 (Mar. 16, 1982); 17 C.F.R. § 229.103(b)(2).

The Rule exceeds the SEC's power to issue blanket mandates for balance book and basic management information.

### 2. The Rule Exceeds the SEC's Power to Require Disclosure of Material Information.

The Rule also transgresses the SEC's power to require, on a company-by-company basis, disclosures of information that is material to a reasonable investor. Liberty.Br.34.

***The SEC's Disclosure Power Is Limited to Material Information.*** The Rule repeatedly requires disclosure of information without *any* purported materiality threshold, SEC.Br.51–52, so the SEC contends its statutory authority extends to demanding information that is merely "important" to some investors, even if not *material*, SEC.Br.31, 50, 52–53.

The SEC glides past the fact that the Supreme Court has interpreted the *same* statutory language as limiting disclosure obligations only to *material* information. *See TSC Indus.*, 426 U.S. at 448–49 & n.10 (addressing disclosures in "the public interest," 15 U.S.C. § 78n(a)); *see also Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 38

14

(2011). Further, the Court has expressly *rejected* the SEC's equivalence between "materiality" and "importan[ce]," SEC.Br.78, holding that not "all facts which a reasonable shareholder might consider *important*" are actually *material*, *TSC Indus.*, 426 U.S. at 445 (emphasis added).

The SEC asserts, without authority, that it is not bound by that Supreme Court precedent because it arose in the context of "individual antifraud cases," rather than in challenges to SEC disclosure rules. SEC.Br.52. But the Supreme Court was interpreting the *very same language* from the very same Acts that the SEC invokes for the Rule's authority. This Court has "caution[ed] against" the "dangerous" exercise of turning statutes into "chameleon[s]" by "giv[ing] the same statutory text different meanings in different cases." *Lopez-Chavez v. Garland*, 991 F.3d 960, 965 n.4 (8th Cir. 2021) (cleaned up).

The SEC cites a handful of particular requirements in the relevant statutes expressly invoking "'material[ity],'" claiming this is proof the SEC is not limited to material disclosures elsewhere. SEC.Br.53. That is a red herring. Congress inserted materiality thresholds when needed to avoid sweeping in substantial amounts of non-material information, e.g., requiring *all* "facts" or "contracts" would result in an avalanche of non-

15

material information, so Congress required disclosure only of "*material* fact[s]" and "*material* contract[s]." 15 U.S.C. §§ 78n(e), 78*l*(b)(1)(I) (emphases added); *see id.* §§ 77aa(24), 77k(a), 77q(a)(2).

By contrast, where Congress did *not* preface disclosures with a materiality qualifier, it was because the information was *inherently* material, such as the company's "balance sheet" and "profit and loss statement." *Id.* § 77aa(25), (26). The selective use of materiality thresholds thus actually *confirms* Congress's focus on limiting the SEC's statutory remit to material information.

**The Rule Persistently Deviates from Traditional Materiality.** The SEC claims that aside from specified portions where the Rule admittedly imposes no materiality qualifier, all other requirements are subject to "traditional notions of materiality." SEC.Br.78–80.

But the text of the Rule says otherwise. *See* Liberty.Br.Add.255–66 (cataloguing every instance where the Rule deviates from traditional materiality). For example, Scopes 1 and 2 disclosures are considered "material" whenever a company faces "transition risk," which in turn is triggered by a lengthy list of circumstances, including any reasonable possibility that a "'state or foreign'" jurisdiction in which the registrant

16

operates *might* impose "'regulatory burdens'" related to climate. SEC.Br.40. The SEC never disputes—and thus concedes—that this definition is so expansive that it effectively covers all registrants and thus *de facto* deems Scopes 1 and 2 to be material. Liberty.Br.34–36.

The SEC also attempts through its briefing to rewrite the Rule by softening its unprecedented materiality frameworks. For example, the SEC confirms the Rule's text repeatedly covers things that are only "*potential[ly]*" or "*likely*" material, as well as information that is material only to a single *aspect* of a registrant's overall business. SEC.Br.36–37 (emphases added); *see* Liberty.Br.31–34. But the SEC now claims those frameworks are "not intended to result in disclosure that is not material." SEC.Br.80 (cleaned up). If that were true, the Rule would have required "materiality," not watered-down versions such as "likely material," "potentially material," or material to a single decision or aspect.

The SEC also tries to rewrite the Rule's requirement that registrants disclose "material impacts on" registrants' "suppliers, purchasers, [and] counterparties." 89 Fed. Reg. at 21,853. The SEC now claims this should be read as requiring disclosure only if those third parties' impacts are, in turn, *also* material to the registrant. SEC.Br.75.

17

But that additional requirement is nowhere to be found in the Rule, the text of which requires disclosure whenever there are "material impacts *on*" "suppliers, purchasers, [and] counterparties." 89 Fed. Reg. at 21,853.

But courts "will not allow an agency to rewrite regulations under the guise of interpreting them." *Amoco Prod. Co. v. Watson*, 410 F.3d 722, 728 (D.C. Cir. 2005) (Roberts, J.) (cleaned up).

The SEC's shifting continues. It claims other requirements are "'unlikely to result in immaterial disclosure[s]'" because the information must involve an aspect that has more than a "'de minimis'" or "1%" effect on the company, SEC.Br.79, but the SEC itself has long stated that materiality is typically not triggered until at least *five percent*, a threshold this Court has also adopted, *see Romine v. Acxiom Corp.*, 296 F.3d 701, 708 (8th Cir. 2002); SEC Staff Acct. Bull. No. 99, 64 Fed. Reg. 45,150, 45,151 (Aug. 19, 1999).

The SEC's rewriting is nothing less than a tacit admission that the Rule *as written* persistently deviates from traditional notions of materiality and therefore exceeds the SEC's authority.

18

## II.   The Rule Is Arbitrary and Capricious.

### A.   The SEC Still Refuses to Admit It Changed Positions.

The SEC disputes it has changed positions regarding its power to require climate disclosures, SEC.Br.44–45, but that is belied by its own brief. The SEC now claims it can mandate disclosures on any issue that might be of interest to some investors or that any government *might* regulate in the future, regardless of materiality. SEC.Br.40, 47, 53. That is certainly a significant shift in approach from the SECs long-held understanding of its own powers. Liberty.Br.39–41.

The SEC unintentionally confirms its shifting positions by comparing the Rule to a handful of short releases from the 1970s saying that companies "should consider disclosing" material effects from environmental laws or litigation. SEC.Br.10, 44–45. But those same decisions declined to "require[] [such disclosures] of *all registrants*" because there could be "more than 100 areas of social information" that would result in overwhelming disclosures, and thus the SEC maintained its position that disclosures may be needed only "in specific cases … to make the statements in a filing not misleading." 40 Fed. Reg. 51,656, 51,656 (Nov. 6, 1975) (emphasis added).

19

Compare that narrow exhortation with the Rule, which stretches for hundreds of pages and mandates extraordinarily broad disclosures, all on the basis that *some* investors think the information is "important," which is the same basis the SEC rejected in 1975. *Id.*

At the very least, the Rule's *mechanisms* for disclosures represent a dramatic shift. The SEC eschews the "[e]xisting" principles-based materiality regime in favor of voluminous and "'standardized'" disclosures. SEC.Br.66. That itself is a significant change. *See Shazi v. Wilkinson*, 988 F.3d 441, 449 (8th Cir. 2021) (agency's switch from case-by-case consideration of evidence to categorical rule was arbitrary-and-capricious).

Because the SEC has changed positions without admitting it, much less explaining it, the Rule must be set aside. *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009).

### B. The Rule Relies on "At Best Mixed" and New Evidence.

The SEC asserted several core justifications for the Rule: (1) "climate risks reduce[] firm revenues and operating income [and] predict[] poor profit growth," and "disclosures about climate-related risks … become priced into a firm's value," SEC.Br.63; (2) climate information

20

is "importan[t]" to "investor decision-making," SEC.Br.20, 64; and (3) there is "substantial investor demand" for climate information, SEC.Br.64. None of these premises is properly supported.

***There Is At-Best "Mixed Evidence" that Climate Risks—or Disclosures of Them—Have an Effect on Company Performance.*** The Rule's admission of "seemingly contradictory" evidence of a link between a company's carbon emissions and its stock price, 89 Fed. Reg. at 21,849 n.2745, makes it a textbook example of "at best mixed" evidence that is insufficient to justify the Rule, *see Bus. Roundtable v. SEC*, 647 F.3d 1144, 1151 (D.C. Cir. 2011) (cleaned up); Liberty.Br.42–43.

In response, the SEC never disputes—and thus concedes—that the "at best mixed" test applies here. Rather, the SEC contends this evidentiary flaw should be discounted because it infects "only one aspect of the Rule['s] disclosures." SEC.Br.74. But that "one aspect" is a major one: the requirement to collect and report Scopes 1 and 2 GHG emissions figures. That requirement is insufficiently supported and thus invalid. *See Bus. Roundtable*, 647 F.3d at 1151.

The Rule also admitted mixed results from studies on profitability and stock price as a result of mandating climate disclosures. 89 Fed. Reg.

21

at 21,851–52; Liberty.Br.42. Again, this is textbook "at best mixed evidence." The SEC argues the Rule's "purpose" was "not to increase companies' stock prices," SEC.Br.73, but that misses the point. If this kind of information were material to reasonable investors, there would be better than "mixed" evidence that such disclosures affect profitability or stock performance—but there just isn't.

**_The SEC Relies on Improper New Studies on the Supposed Importance of Climate Disclosure to Reasonable Investors._** The Rule also tried to justify the supposed "importance of the [climate] information to investor decision-making," SEC.Br.20, by citing dozens of studies that the SEC had never previously identified, Liberty.Br.42–43.

The SEC acknowledges that of the 47 authorities cited for the core aspects of the Rule, 37 of them were _never_ previously identified by the SEC itself. SEC.Br.95 & n.9. The SEC claims this flaw should be excused because a handful of the missing articles were cited among the 24,000 comments the SEC received. _Id._; SEC, Press Release, _SEC Adopts Rules to Enhance and Standardize Climate-Related Disclosures for Investors_ (Apr. 8, 2024), https://tinyurl.com/2ftd5k9x. But it is "'_the agency's_ duty'"—not commenters'—to "identify" those key articles in advance of

22

the final rule so the public can comment on them. *Owner-Operator Indep. Drivers Ass'n, Inc. v. FMCSA*, 494 F.3d 188, 199 (D.C. Cir. 2007) (emphasis added) (cleaned up). Liberty was not required to scour 24,000 comments and critique every study cited.

The SEC's failure is not harmless. *See* SEC.Br.96. In the relevant portion of the Rule, nearly half a dozen assertions relied *exclusively* on new material. 89 Fed. Reg. at 21,848–49 & nn.2738, 2740–42, 2746.

Without those new articles, the Rule's lack of supporting evidence is even more dramatic. Indeed, the SEC repeatedly claims that these new studies are *necessary* to provide the requisite support to uphold the Rule. SEC.Br.74, 97 nn.12–13. That proves the SEC's error is harmful.

***Disclosure for Disclosure's Sake Is Insufficient.*** The SEC's only remaining justification for the Rule is that some investors allegedly want this information despite a lack of connection with corporate or stock performance. *See* SEC.Br.20, 64. But disclosure for disclosure's sake is an improper justification under Supreme Court caselaw, which centers the SEC's disclosure power on the "reasonable *investor*," *TSC Indus.*, 426 U.S. at 445, who invests "with the expectation … [of] profit," *SEC v. W.J. Howey Co.*, 328 U.S. 293, 298–99 (1946). If the SEC could mandate

23

disclosures without sufficient evidence of connection to corporate or stock performance, it would lead to an avalanche of non-material disclosures, which is precisely what Congress prohibited. *See TSC Indus.*, 426 U.S. at 445.

Because the mere say-so of some investors cannot justify disclosure for its own sake, and because the other identified justifications suffer from their own fatal evidentiary flaws, the Rule is arbitrary and capricious.

### C.   The Final Rule "Sidestepped" Core Criticisms and Changed Dramatically from the Proposed Rule.

During the rulemaking, the SEC recognized and purported to address commenters' overwhelming criticism of (a) mandating disclosures of Scopes 1 and 2 GHG emissions, 89 Fed. Reg. at 21,732–33; and (b) requiring data collection from third parties for Scope 3 emissions, *id.* at 21,728–29.

But the SEC's "solutions" violated the APA. *First*, the SEC "was aware of the [commenters'] concern[s]" about mandating Scopes 1 and 2 disclosures, yet "chose to respond with … provision[s] that in no way grappled with [those] concern[s]." *Ohio v. EPA*, 144 S. Ct. 2040, 2054, 2056 (2024). The SEC said it was abandoning mandatory Scopes 1 and 2

disclosures in favor of requiring them only when "material"—but the SEC then just redefined "materiality" to *de facto* include all companies and thus make the disclosures mandatory again, a point the SEC *never* disputes. That is a paradigmatic example of an agency "response [that] did not address the [commenters'] concern so much as sidestep it." *Id.* at 2055. That was arbitrary and capricious. *See id.*

*Second*, under the logical-outgrowth doctrine, an agency cannot "significantly amend the rule between the proposed and final versions." *Id.* at 2056 (cleaned up). The replacement regime for Scope 3 disclosures was materially different from the original proposal, although it still causes registrants to collect data from third parties. The SEC's brief unintentionally admits the point, spending two pages on how the final Rule's requirements for third-party disclosures for suppliers supposedly "differ in many ways" from the *proposed* Scope 3 requirements. SEC.Br.75. One would be hard pressed to find a better definition of a logical-outgrowth violation.

Appellate Case: 24-1624    Page: 31    Date Filed: 09/26/2024 Entry ID: 5440363

## III. The Rule Violates the First Amendment.

### A. The SEC Cannot "Rejigger" the Informational Playing Field by Compelling Speech.

The Rule is subject to (and fails) heightened scrutiny because it is unambiguously a content-based law requiring controversial disclosures from registrants. *See* Liberty.Br.51–57. The Rule tries to "tilt public debate in a preferred direction," i.e., in favor of corporate discussions about climate change, its importance, and how it is being addressed. *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 578–79 (2011). For example, the Rule requires a registrant to explain how it "[p]rioritizes whether to address [] climate-related risk[s]" and "[d]escribe the board of directors' oversight of climate-related risks." 89 Fed. Reg. at 21,915–16.

In response, registrants can either: (1) give in and talk about climate and how it is being prioritized, and thereby "'avoid controversy'"; or (2) "out" themselves by saying they do not undertake such prioritization steps or discussions, and thus risk being labeled climate heretics, *Telescope Media Grp. v. Lucero*, 936 F.3d 740, 754 (8th Cir. 2019). That lose-lose scenario is precisely why "[l]aws that compel speech or regulate it based on its content are subject to strict scrutiny." *Id.*

26

As the Supreme Court recently held, "the government cannot get its way just by asserting an interest in improving, or better balancing, the marketplace of ideas." *Moody v. NetChoice, LLC*, 144 S. Ct. 2383, 2402 (2024). "However imperfect the private marketplace of ideas" may be, it is "worse" for "the government itself [to] decid[e] when speech was imbalanced, and then coerc[e] speakers to provide more of some views or less of others." *Id.* at 2403. Thus, regardless of the level of scrutiny that applies, the government is "barred" from "forcing a private speaker to present views it wished to spurn in order to rejigger" the balance of public discussion. *Id.* at 2402.

But that is precisely what the Rule does. The SEC believes companies are not talking in the right way—or enough—about climate change. *See* 89 Fed. Reg. at 21,673. So the SEC decided to "rejigger" the balance of speech—in the SEC's words, to fix the "information asymmetry," SEC.Br.20–21, 73, 81–82—by coercing registrants to provide "more" speech indicative of the view that climate change discussions are worthy of their time, an endorsement that many registrants would rather "spurn." *Moody*, 144 S. Ct. at 2402–03.

27

The SEC contends the Rule requires companies only to disclose certain climate-related actions they already undertake. SEC.Br.78. But the Rule forces companies to choose between speaking about their actions "[p]rioritiz[ing]" climate change responses, or instead outing themselves as not taking such steps to combat the issue of climate change. 89 Fed. Reg. at 21,915–16.

When the subject matter itself is controversial, so is requiring companies to talk about it. That is why even purely factual disclosures about registrants' use of certain minerals, "the labor conditions of their factories abroad[,] or the political ideologies of their board members" would be "*obviously repugnant to the First Amendment.*" *NAM v. SEC*, 800 F.3d 518, 555 (D.C. Cir. 2015) (emphasis added). So is requiring disclosures of views (*vel non*) on climate change and how registrants "[p]rioritize[]" addressing it. 89 Fed. Reg. at 21,915–16.

The Court need not delve into particular levels of scrutiny or interest balancing: under well-established caselaw, the Rule violates the First Amendment. *See NAM*, 800 F.3d at 555; *Moody*, 144 S. Ct. at 2402–03.

Appellate Case: 24-1624     Page: 34     Date Filed: 09/26/2024 Entry ID: 5440363

**B.    The SEC's Counter Arguments Are Unpersuasive.**

The Court should reject the SEC's attempts to water down the applicable First Amendment standards.

*The SEC Does Not Have First Amendment Exceptionalism.* The SEC asserts there is only "'limited First Amendment scrutiny'" of its actions. SEC.Br.99. But the SEC "should not face relaxed review just because Congress used the 'securities' label," *NAM*, 800 F.3d at 555, and thus the SEC cannot "regulate otherwise protected speech using the guise of securities laws," *NAM v. SEC*, 748 F.3d 359, 372 (D.C. Cir. 2014).

**Zauderer *Does Not Apply.*** The SEC next tries to avoid heightened scrutiny by invoking *Zauderer*. SEC.Br.98, 107. The Rule fails even under *Zauderer* (*see* Parts III.A, *supra*, and III.C, *infra*), but in any event, *Zauderer* applies only to disclosures of "purely factual and uncontroversial information about the terms under which services will be available." *NIFLA v. Becerra*, 585 U.S. 755, 768–69 (2018) (cleaned up). Neither element is satisfied.

The SEC is wrong that "disclosures in the securities law context" are inherently about the terms under which services will be available. SEC.Br.98. Many of the Rule's disclosures apply to "periodic" reports that

are entirely unconnected to any particular securities transaction. 15 U.S.C. § 78m(a).

The SEC is also wrong that "involving the same general subject matter as a debated political or ideological matter is not enough to be considered 'controversial.'" SEC.Br.104–05. As explained above, climate disclosure themselves are indeed controversial. *See* Part I.A, *supra*. Further, requiring disclosures about a controversial subject inherently draws the registrant into that controversy. In the conflict-minerals case, the SEC likewise insisted it was requiring only purely factual information about whether registrants were using conflict minerals, but the D.C. Circuit recognized that such disclosures are inherently designed to impute "moral responsibility" for those who give a certain answer. *NAM*, 800 F.3d at 530. The same is true here for climate disclosures.

The SEC's only response is that the conflict-minerals caselaw turned on the "particular language issuers were required to use," whereas registrants are "free to use their own words." SEC.Br.106. But "the right to explain compelled speech is present in almost every such case and is inadequate to cure a First Amendment violation." *NAM*, 800 F.3d at 556.

***The Commercial Speech Doctrine Is Inapplicable.*** The SEC also claims the commercial-speech doctrine applies, SEC.Br.98–100, but (as the SEC concedes) the disclosures do not "propose a commercial transaction," *Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 762 (1976).

Rather than dispute Liberty's argument (Liberty.Br.56) that the Rule satisfies *none* of the three factors this Court uses to identify commercial speech, *see Dryer v. NFL*, 814 F.3d 938, 943 (8th Cir. 2016), the SEC tries to evade the test altogether by claiming *Dryer* "involved Copyright Act preemption, not the First Amendment." SEC.Br.101. But those three factors are taken directly from First Amendment caselaw.[4]

The SEC next contends that commercial speech encompasses anything that "'relate[s] solely to the economic interests of the speaker and its audience.'" SEC.Br.100. But the Rule does not "solely" relate to "economic interests." The SEC admits that activists want such disclosures for reasons unrelated to investment decisions, such as

---

[4] *Dryer* cited *Porous Media Corp. v. Pall Corp.*, 173 F.3d 1109 (8th Cir. 1999), which in turn cited *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60 (1983), which was about advertisements for contraceptives.

31

"pressur[ing] registrants to adopt specific or inflexible climate-risk governance practices." 89 Fed. Reg. at 21,713.

## C. The Rule Cannot Satisfy Heightened Scrutiny.

The SEC essentially concedes that the Rule fails strict scrutiny, arguing only that the Rule survives lesser standards of scrutiny that do not apply here. But even if lesser scrutiny did apply, the Rule still fails. Intermediate scrutiny looks to "(1) whether the commercial speech at issue concerns unlawful activity or is misleading; (2) whether the governmental interest is substantial; (3) whether the challenged regulation directly advances the government's asserted interest; and (4) whether the regulation is no more extensive than necessary to further the government's interest." *1-800-411-Pain Referral Serv., LLC v. Otto*, 744 F.3d 1045, 1055 (8th Cir. 2014).

The SEC fails the first factor because it repeatedly and expressly disclaims any "antifraud" basis for the Rule and admits it has no example of any specific company ever omitting material climate information, let alone an investor being defrauded by such omission. SEC.Br.67, 109.

Further, the SEC's asserted interests here are insufficient. The desire to remedy informational "asymmetries" is insufficient, even under

32

*Zauderer*. *See Moody*, 144 S. Ct. at 2402–03. And although the SEC claims a connection between the Rule's disclosures and corporate finances, SEC.Br.108, 112, the SEC failed to support that connection even under the APA's framework, *see* Part II.B, *supra*, which means it certainly fails under heightened review.

Even if the SEC did have a sufficient interest, the Rule is still unconstitutional because the massive disclosures required are far "more extensive than is necessary." *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 564–66 (1980). The Rule forces registrants to make statements about whether they are addressing and prioritizing climate issues, even though the SEC admits that (1) "registrants are already required to disclose the financial statement effect of material climate risks under existing rules," 89 Fed. Reg. at 21,797; (2) voluntarily produced climate-focused data is already available elsewhere, SEC.Br.13–14, 45–46, 64, 67; and (3) there is no evidence any specific company has ever omitted material climate-related information in existing disclosures, SEC.Br.67. The Rule imposes dramatic costs, with trivial-to-nonexistent benefits.

33

The SEC claims existing climate data "'may'" not be as comprehensive as what the Rule demands, SEC.Br.65, but that will be the case every time the government compels speech. What matters is that the existing framework and available information has been more than sufficient at addressing whatever government interest (if any) may exist, confirming that this multi-billion-dollar regime is "unduly burdensome," *Zauderer v. Off. of Disciplinary Counsel of the Sup. Ct. of Ohio*, 471 U.S. 626, 651 (1985), and not "necessary," *Otto*, 744 F.3d at 1055. The Rule therefore fails heightened review.

## IV.    The Court Should Set Aside the Rule in Its Entirety.

The SEC asks the Court to salvage any aspect of the Rule not declared unlawful, SEC.Br.113–15, but substantive and procedural violations infect the entire Rule, as demonstrated above.

Even if some small pieces could survive, the "unlawful provisions are not readily severable from the remaining provisions," given the interlocking and complex nature of the disclosures. *Dep't of Educ. v. Louisiana*, 144 S. Ct. 2507, 2510 (2024). Relatedly, covered entities will face "difficulty … in determining how to apply the rule" when "some provisions [are] in effect and some" others are not. *Id.*

Appellate Case: 24-1624    Page: 40    Date Filed: 09/26/2024 Entry ID: 5440363

There is also "'substantial doubt that the agency would have adopted [any] severed portion on its own,'" despite the perfunctory "severability clause." *Mayor of Baltimore v. Azar*, 973 F.3d 258, 292 (4th Cir. 2020). The SEC wanted to make a splash by imposing an unprecedented, multi-billion-dollar rule running the gamut on climate change. It beggars belief the SEC would have chosen to move forward only with leftover, minor provisions "'on [their] own.'" *Id.*

Finally, the intervening states argue that challengers must show the Rule is unlawful in all its applications. Intervenors.Br.13–14. But whenever a rule exceeds statutory authority, the remedy is to "vacate the … rule." *Iowa League of Cities v. EPA*, 711 F.3d 844, 875 (8th Cir. 2013); 15 U.S.C. § 77i(a) ("set aside"). The SEC cannot avoid vacatur of the entire Rule by contending that a narrower, hypothetical rule might have survived.

Appellate Case: 24-1624    Page: 41    Date Filed: 09/26/2024 Entry ID: 5440363

## CONCLUSION

The Court should set aside and vacate the Rule.

September 17, 2024

Katherine C. Yarger
LEHOTSKY KELLER COHN LLP
700 Colorado Blvd # 407
Denver, CO 80206

Respectfully submitted,

/s/ R. Trent McCotter

R. Trent McCotter
  *Counsel of Record*
Jonathan Berry
Michael Buschbacher
Jared M. Kelson
BOYDEN GRAY PLLC
800 Connecticut Ave. NW
Suite 900
Washington, DC 20006
202-706-5488
tmccotter@boydengray.com

*Counsel for Petitioners*

36

# CERTIFICATE OF COMPLIANCE

Pursuant to 8th Cir. R. 28A(h)(2), the electronic version of this brief has been scanned for viruses and is virus-free.

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 6487 words, excluding the parts of the motion exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Century Schoolbook font.

This brief complies with the electronic filing requirements of 8th Cir. R. 25A because the text of the electronic brief is identical to the text of the paper copies and because the electronic version of this brief has been scanned for viruses and no viruses were detected.

/s/ R. Trent McCotter
R. Trent McCotter

Appellate Case: 24-1624    Page: 43    Date Filed: 09/26/2024 Entry ID: 5440363

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record who have consented to electronic service are being served today with a copy of this document via the Court's CM/ECF. All parties in this case are represented by counsel consenting to electronic service.

/s/ R. Trent McCotter
R. Trent McCotter

Appellate Case: 24-1624    Page: 44    Date Filed: 09/26/2024 Entry ID: 5440363